## C. L. Roberts, Appellee, v. Estate of Henry L. Roberts, Deceased.
### Lura E. Bend, Appellant.
### Gen. No. 5,635.

EXECUTORS AND ADMINISTRATORS—*claim for personal services.* A son to avoid limitations running against his claim against his father's estate for personal services, relied on a memorandum found in his father's effects, admitting money was owing to the son, and made *prima facie* proof of his claim and the genuineness of the memorandum. The writing was not a memorandum of an ascertained debt, but at most was made by deceased for his own use, and items supposed to be credits were not explained. Evidence that the son had no agreement was not contradicted, and there was evidence that the memorandum was not in the father's handwriting. The son had not made payment for farm products received from his father. He made no claim during his father's lifetime and waited until a year after letters had been issued to file his claim. *Held*, a verdict for the son could not be sustained, and the cause should be submitted to another jury.

Appeal from the Circuit Court of Lee county; the Hon. R. S. FARRAND, Judge, presiding. Heard in this court at the April term, 1912. Reversed and remanded. Opinion filed October 15, 1912.

TRUSDELL, SMITH & LEECH, for appellant; ADAM C. CLIFFE, of counsel.

CHARLES F. PRESTON, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

Henry L. Roberts died May 30, 1910, leaving surviving four children, Crawford Leroy Roberts, usually called "Roy;" Lura E. Bend; Blanche, now Mrs. Ferkins, and Etta Roberts. Appellee was appointed administrator, and on the last day of the year thereafter filed a claim against the estate. The County Court appointed Harry Edwards to defend the estate and he consented to the allowance of the claim, and it

was allowed as of the seventh class in the sum of $872.18. Mrs. Bend appealed from that allowance to the Circuit Court, where there was a jury trial and a verdict and a judgment allowing the claim for the same amount, and from that judgment Mrs. Bend prosecutes this appeal. The transcript from the County Court to the Circuit Court did not include a copy of the claim, and it is not in the record before us, and we have no means of knowing exactly the basis of the claim. Appellee was married in January, 1905. His father was a farmer, and appellee lived with his father and worked for him on the farm till appellee married at the age of about 30 years. Appellee produced proof that he so worked for his father, and that his father once told a neighbor that he got Roy for $25 per month. If this is a claim for those services, rendered before he was married and based upon this oral proof only, then the statute of limitations was a defense. Plaintiff, however, produced a page, which was originally blank for memoranda in a patent medicine memorandum book, the first written line of which is assumed to read as follows: "Owe Roy Money $982.00." Underneath are six other items, the first of which has the date "1907." At the bottom under a straight line is the amount "$726.82." The sum of the other items taken from the $982.00 leaves $726.82, which was written in blue pencil. Etta Roberts testified for appellee that during her father's last illness, she found this memorandum book in a locked drawer among her father's private papers and that all of the writing was in her father's hand, except the "$726.82," which her brother wrote there when she showed the page to him after her father's death. She further testified that she let appellee take it for a little time, but with that exception it had been in her possession ever since her father died. Appellant introduced evidence tending to show that the word "Roy" in said quoted sentence was written in much heavier pencil marks than the rest. She also produced proof that in a conversation

with appellee the latter said he had stayed at home and worked hard a good many years and had had no agreement with his father for wages; that his father gave him money when he asked for it; that he had never had any settlement with his father; and that he did not have any book account. This was proved by several witnesses and concerned a conversation after the death of his father, and he was a competent witness as to that conversation and did not testify concerning it; and this was after he had seen the memorandum in question and he did not then mention it there. At a later conversation his sister Etta showed the book to Mrs. Bend. Appellant also proved that after appellee married, he ran a livery stable in a village near his father's farm and that appellee's teams hauled many loads of corn, oats and hay from his father's farm to appellee's livery stable, but the amount or value thereof appellant was not able to show. Appellant also proved that their father owned a farm worth about $25,000 above the incumbrance upon it. The memorandum above quoted was not anything given by the father to appellee to evidence a debt. If, as appellee said, he had never had a settlement with his father, this was not a memorandum of any debt which had been ascertained between them. At most, it was merely a memorandum made by deceased for his own use. It was not shown that any other accounts were kept in this book. It was not shown that the items underneath the $982.00 were payments by appellee to his father. They might just as well have been still further indebtedness which deceased set down as owing his son. Appellee did not show that any such payments had been made by him. If deceased owed appellee that sum of money when appellee left him in January, 1905, it is strange, in view of his father's financial means, that he should not have sought payment from his father or a note during the five years and more while his father lived. If he bought hay and grain of his father thereafter, its value would natu-

rally be applied upon this debt. He did not show that he ever paid his father for the hay or grain. If he did not, then this claim is unjust. He knew of this memorandum shortly after his father died. He waited till the last day of the year after letters were issued before he filed his claim. Mrs. Bend had seen this memorandum but an instant till it was produced at the trial in the Circuit Court. After the verdict the court permitted her counsel to have the memorandum photographed and enlarged, and thereupon appellant argued that the showing made by the photograph and enlargement required a new trial. It is claimed that the photograph shows that the entire line is not in the handwriting of the same person and that a part of it has been altered.

Upon a consideration of the entire evidence, we are of opinion that the case ought to be submitted to another jury. Claims against estates of deceased persons need to be scrutinized with care. The circumstances above set out throw great doubt upon the genuineness of this memorandum and, but for the memorandum, the Statute of Limitations would be a defense to any services rendered by appellee for his father before he left him in January, 1905.

The judgment is therefore reversed and the cause is remanded.

*Reversed and remanded.*